# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| Harriett A. Ames, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:13-cv-01054 (APM) |
| ) | |
| Jeh Charles Johnson, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Harriett Ames is the former Chief of the Personnel Security Branch within the Federal Emergency Management Agency.  As head of the Personnel Security Branch, Plaintiff's responsibilities included adjudicating security clearances for employees.  Claiming that she was terminated from her position because of her race, Ames filed suit under Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Constitution.  The parties agree that, under *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), and its progeny, race discrimination claims that require courts to evaluate the merits of security clearance determinations are non-justiciable.  They disagree, however, as to whether *Egan* requires dismissal of this case.

The court concludes that, at this early stage, on Defendant's Motion to Dismiss, it cannot determine whether adjudicating Plaintiff's discrimination claim necessarily will require the court to evaluate the merits of her security clearance decisions.  Thus, the court cannot say for certain that *Egan* precludes review of her discrimination claim.  The court, therefore, denies Defendants' motion to dismiss with respect to Plaintiff's Title VII claim.  The court, however, grants

Defendants' motion with respect to Plaintiff's claim under the Equal Protection Clause, because Title VII is the exclusive remedy for her discrimination claim.

## II.    BACKGROUND

Plaintiff Harriett Ames is an African-American woman and the former Chief of the Personnel Security Branch at the Federal Emergency Management Agency ("FEMA"), an agency within the Department of Homeland Security ("DHS").[1]  Am. Compl., ECF No. 29, ¶¶ 4, 5, 15. The Personnel Security Branch is a component of the Program Protection Division, which itself is a component of the Office of the Chief Security Officer of FEMA.  *Id.* ¶ 16.  As the head of the Personnel Security Branch, Ames was responsible for "adjudicating [security] clearances of employees and prospective employees" within the Office of the Chief Security Officer.  *See id.* ¶ 19.

On July 22, 2011, agency management "barred" Plaintiff and her branch from adjudicating security clearances.  *Id.*  Ames was not given a reason for the decision at the time, *id.* ¶ 20, but according to an internal agency report prepared after an investigation into Ames' claims of racial discrimination [hereinafter "Final Agency Decision"], she was suspended from processing security clearances because the "Agency learned that [Plaintiff] had served as both the adjudicator and character reference for one of the individuals that [she] was adjudicating and had supposedly cleared." Final Agency Decision, ECF No. 38-1, at 6 (cited in Am. Compl. ¶ 23).[2]  Plaintiff denies this charge.  Am. Compl. ¶ 24.  The Final Agency Decision further states that Plaintiff was suspended from her adjudicatory responsibilities because a review "had found several questionable

---

[1] When Plaintiff filed her lawsuit on July 10, 2013, the Secretary of the Department of Homeland Security was Janet Napolitano.  Napolitano has since been replaced by Jeh Charles Johnson.

[2] At a hearing held on August 7, 2015, the court ordered Plaintiff to produce the Final Agency Decision, which she quoted in her complaint.  Mot. Hr'g Tr. 14:16-14:19, Aug. 7, 2015 (draft).  Plaintiff filed the document later that day. *See* ECF No. 38-1.  The court may consider that document on a motion to dismiss because it was incorporated in the complaint.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

cases that had been improperly adjudicated by [Plaintiff and her team]," had uncovered "deficiencies in [her] branch," and had revealed issues with Plaintiff's "management style and manner of processing."  Final Agency Decision at 7 (quoted in Am. Compl. ¶ 22).

Another reason offered for Plaintiff's removal, according to the complaint, though not expressly stated in the Final Agency Decision, was "that she had erroneously granted security clearances" to two people, Gary Walker and Skip Bland.  *Id.* ¶ 25.  Ames contends that those clearances were "provided on the same bases as clearances have consistently been provided white people throughout DHS" and "by white adjudicators throughout DHS."  *Id.* ¶¶ 28-29.  She further alleges that no white official in DHS "has been removed from his or her duties for providing clearances on the bases relied on by Ms. Ames."  *Id.* ¶ 30.  She contends that management's explanations for removing her from adjudicating security clearances "are unworthy of credence and are mere pretexts for discrimination and retaliation."  *Id.* ¶ 33.

In September 2011, agency management detailed an employee from DHS headquarters to take over Plaintiff's duties adjudicating security clearances, though Ames nominally remained the head of her branch.  *Id.* ¶ 34.  Plaintiff's complaint quotes from what appears to be another internal agency document, explaining that agency management "decided that this was the best path for mitigating hard issues found [within] the Personnel Security Branch."  *Id.* ¶ 35.

Then, in November 2011, Ames was formally removed as head of the Personnel Security Branch and transferred to a position in the training branch, while a white employee took over her position as chief.  *Id.* ¶¶ 39, 42.  Jorge Cantu, the Director of the Program Protection Division, advised Plaintiff that the reason for her transfer was his "desire to improve efficiencies and effectiveness within the Program Protection Division and to allow you an opportunity to use your security skills within another unit of [the Office of Chief Security Officer]."  *Id.* ¶¶ 43-44.  Her

new position did not, however, require her to use her security skills. *Id.* ¶ 50. Cantu allegedly later denied that he was involved in the decision to reassign Ames to the training branch. *Id.* ¶¶ 47-48.

After exhausting her administrative remedies, including filing a complaint with the Equal Employment Opportunity Commission, Ames brought this action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause.

## III. LEGAL STANDARD

Defendants properly bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (reviewing a motion to dismiss under *Egan* under Rule 12(b)(6), and not for lack of subject matter jurisdiction under Rule 12(b)(1)). When evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). The court, however, need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*,

550 U.S. at 556).  The factual allegations in the complaint need not be "detailed"; however, the

Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S.

at 555).  If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief

can be granted, the court must grant defendant's Rule 12(b)(6) motion.  *See Am. Chemistry*

*Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

When bringing a Title VII claim, the plaintiff need not allege a *prima facie* case under the

*McDonnell Douglas* framework to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 511-12 (2002).[3]  As long as the "allegations give [the defendant] fair notice of what

petitioner's claims are and the grounds upon which they rest," the notice pleading requirement of

Rule 8(a) is met.  *Id.* at 514.  Once a Title VII claim has been adequately stated, "it may be

supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*,

550 U.S. at 563 (other citations omitted) (citing *Swierkiewicz*, 534 U.S. at 514).

## IV.    DISCUSSION

### A.     Plaintiff's Title VII Claim

In *Egan*, the Court held that the Merit Protection Board lacked the authority to review a

federal employee's complaint about the denial of a security clearance.  484 U.S. at 527-29.  The

---

[3] In cases where there is no direct evidence of discrimination, courts have used the *McDonnell Douglas* framework to evaluate whether a plaintiff's claim can survive a motion for summary judgment or judgment as a matter of law. Under that framework, the plaintiff bears the burden of establishing a *prima facie* case by showing that: "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class.)" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014).  If the plaintiff establishes a *prima facie* case, the burden shifts to the employer, who must "articulate some legitimate, nondiscriminatory reason for the employment action," which the plaintiff can rebut by showing that the employer's stated reason is "merely pretext for discrimination." *Id.* at 1022-23 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973) (internal quotation marks omitted).

Court stated that, "[f]or 'reasons . . . too obvious to call for enlarged discussion,' the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it."  *Id.* at 529 (citation omitted).  "[I]t is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence."  *Id.*  The ordinary presumption favoring reviewability of administrative actions, the Court explained, "runs aground when it encounters concerns of national security."  *Id.* at 527.

Our Court of Appeals has applied *Egan* to preclude courts from hearing "a discrimination claim based on an adverse employment action resulting from an agency security clearance decision."  *Ryan v. Reno*, 168 F.3d 520, 523 (D.C. Cir. 1999) (citing cases).  In *Ryan*, the plaintiffs had been denied federal jobs because they were not granted the required security clearances, a decision that the plaintiffs asserted was discriminatory.  *Id.* at 522-23.  The Court of Appeals held that the plaintiffs' denial of employment could not be judicially reviewed under *Egan*.  *Id.* at 524. Stating that it was "necessary" to apply the *McDonnell Douglas* burden shifting analysis to determine the merits of the plaintiffs' claims, the court concluded that "a court cannot clear the second step of *McDonnell Douglas* without running smack up against *Egan*."  *Id.*  Because the federal agency had proffered as its non-discriminatory reason for the non-hiring the fact that the plaintiffs could not obtain security clearances, the court ruled that plaintiffs "could not challenge the proffered reason's authenticity without also challenging its validity."  *Id.* (citation omitted). But the plaintiffs could not challenge the reason's validity without asking the court to review the merits of the security clearance decision—an action forbidden under *Egan*. Thus, the Court of Appeals held that "under *Egan* an adverse employment action based on denial or revocation of a

security clearance is not actionable under Title VII." *Id.* (footnote omitted). *See also Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005) (citations omitted) (holding that, under *Egan*, "employment actions based on denial of security clearance are not subject to judicial review").

Since deciding *Ryan*, the Court of Appeals has applied *Egan* more narrowly to Title VII claims. In *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012), the Court of Appeals wrote:

> [W]e do not believe that *Egan* insulates from Title VII *all* decisions that might bear upon an employee's eligibility to access classified information. Rather, the Court in *Egan* emphasized that the decision to grant or deny security clearance requires a "[p]redictive judgment" that "must be made by those with the necessary expertise in protecting classified information."

*Id.* at 767 (quoting *Egan*, 484 U.S. at 529). The court concluded that *Egan* did not preclude judicial review of discrimination claims premised on knowingly false security reports or referrals. *Id.* at 770.

But where a Title VII plaintiff's claims have placed an agency's security clearance decision squarely at issue, the Court of Appeals has not hesitated to apply *Egan* and *Ryan* to bar judicial review. Thus, in *Bennett*, 425 F.3d at 999, the court held that, under *Ryan*, the plaintiff there could not proceed with a suit that would have required evaluation of the agency's claim that it had terminated the plaintiff because of her inability to maintain a security clearance. "Bennett could not challenge the authenticity of TSA's proffered reason—her inability to maintain a security clearance—without also challenging the validity of the reason, which is what *Ryan* prohibits." *Id.* at 1003. Likewise, in *Foote v. Moniz*, 751 F.3d 656 (D.C. Cir. 2014), the Court of Appeals held that a Title VII plaintiff could not challenge the Department of Energy's decision to deny him certification under the agency's Human Reliability Program, which evaluated the suitability of employment applicants who would have access to nuclear devices, materials, or facilities. *Id.* at 658-59.

Defendants contend that *Egan* and the above-cited cases compel the court to dismiss Plaintiff's suit. Defendants point to the Final Agency Decision's conclusion that Ames' removal from security clearance adjudication was due to "several questionable cases that had been improperly adjudicated," Final Agency Decision at 7, as well as Plaintiff's own assertion that the agency's action was because "she had erroneously granted security clearances to . . . Gary Walker and Skip Bland." Am. Compl. ¶ 25. Defendants argue that, in light of these non-discriminatory reasons for the adverse employment decision, adjudication of Plaintiff's claims will require the court to "review the merits of the security decisions in question." Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 31-1, at 7.

The court disagrees. In *Rattigan*, the Court of Appeals emphasized that its duty was not only to follow *Egan*, "but also to 'preserv[e] to the maximum extent possible Title VII's important protections against workplace discrimination and retaliation.'" *Rattigan*, 689 F.3d at 770 (citations omitted). Heeding that guidance here, the court cannot say with certainty—at the motion to dismiss stage—that resolving Plaintiff's claims *necessarily* will require the court to run afoul of *Egan* by second-guessing the agency's "predicative judgment" about security clearances. *See id.* at 767; *see also Thomas v. Johnson*, 4 F. Supp. 3d 157, 160 (D.D.C. 2014) (rejecting judgment on the pleadings based on *Egan* because plaintiff's employment discrimination claim did not require a merits review of the underlying security clearance decision).

It is true that if Plaintiff's claims ultimately depend on proof that she correctly adjudicated the merits of security clearances, then this case will be non-justiciable under *Egan*. In other words, Plaintiff cannot rely on the *McDonnell Douglas* burden-shifting framework to show discrimination if her evidence of pretext is that she, in fact, did correctly adjudicate security clearances. *See Ryan*, 168 F.3d at 524 (finding that, because appellants could not challenge the authenticity of the

proffered non-discriminatory reason for the security clearance decision without also challenging its validity, the court could not conduct the *McDonnell Douglas* analysis "without running smack up against *Egan*"); *Bennett*, 425 F.3d at 1003 ("Bennett could not challenge the authenticity of TSA's proffered reason-her inability to maintain a security clearance-without also challenging the validity of the reason, which is what *Ryan* prohibits."). But, at this stage, it is far from clear that the "predictive judgment" of trained security clearance personnel—whether that be Ames herself or those who removed her—will be at issue here. The Final Agency Decision is unclear as to the specific, non-discriminatory reasons offered for Ames' removal as branch chief. The explanation provided for her initial suspension was that she had adjudicated a security clearance under a "conflict of interest" by acting both as an adjudicator and as a character reference for one individual. Final Agency Decision at 6. A challenge to that non-discriminatory reason arguably would not require the court to second-guess Ames' or anyone else's "predictive judgment." She either operated under a conflict of interest or she did not. The merits of the adjudication itself thus may not become an issue.

Similarly, the Final Agency Decision also states that Plaintiff was relieved of adjudication responsibilities because a review had found "several questionable cases that had been improperly adjudicated" by Plaintiff and her team. *Id.* at 7. The Final Agency Decision does not make clear, however, what made those adjudications "questionable" or "improper." The adjudications might have been "improper" because Plaintiff's decisions about security clearances were wrong on the merits, in which case the agency's "predictive judgment" would become an issue and *Egan* would preclude judicial review. Alternatively, the adjudications might have been "improper" because Plaintiff did not follow certain agency policies about granting interim clearances. In *Thomas v.*

9

*Johnson*—which, according to Plaintiff's counsel, is a "related" case[4]—the court held that the latter situation did not necessarily require it to review the merits of an underlying security clearance decision. *See Thomas*, 4 F. Supp. 3d at 160.

In short, this is not a case in which the specific, non-discriminatory reasons for suspending and then removing Plaintiff from her position as chief of the Personnel Security Branch are apparent or uncontested at this stage of the proceedings. *Cf. Ryan*, 168 F.3d at 524 (observing that to prove discrimination the plaintiffs had to "challenge the proffered [non-discriminatory] reason's authenticity"); *Bennett*, 425 F.3d at 1001 (stating that "[b]oth parties agree that TSA's proffered reason for terminating Bennett was her falsification" of her employment application); *Foote*, 751 F.3d at 657 (observing that the proffered reason for employment termination was failure to obtain agency reliability certification). Therefore, the court cannot conclude, on Defendants' motion to dismiss, that Plaintiff's Title VII claim is non-justiciable under *Egan*. With the benefit of discovery, and on a motion for summary judgment, the facts may crystalize and enable the court to re-evaluate the whether *Egan* precludes judicial review of Plaintiff's claim.[5]

---

[4] Plaintiff's counsel raised the *Thomas* case for the first time at oral argument. *See* Mot. Hr'g Tr. 12:16-13:4, Aug. 7, 2015 (draft). *Thomas* involves an allegation that the plaintiff in that case improperly granted interim security clearances to the same two employees at issue here—Gary Walker and James Bland. *Compare* Am. Compl. ¶ 25 (alleging that a reason for her removal was "erroneously granted security clearances" to Walker and Bland), *with Thomas*, 4 F. Supp. 3d at 158 (stating that the plaintiff allegedly had violated agency policy by "permitting two employees, Gary Walker and James Bland, to work in positions requiring a top secret security clearance while their clearance applications were still being investigated").

[5] If discovery were to reveal direct evidence of discrimination, Plaintiff might avoid the *Egan* hurdle altogether, because she would not need to prove pretext under *McDonnell Douglas*. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121-22 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). Furthermore, though it remains an open question in our Circuit, the Third Circuit has held that *Egan* does not necessarily preclude review of a discrimination case based on a mixed-motive theory. *See Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008) ("[W]e conclude that we have jurisdiction to review Makky's claim of discrimination because a discrimination claim under a mixed-motive theory does not necessarily require consideration of the merits of a security clearance decision. . . . We reiterate that in analyzing Makky's mixed-motive Title VII claim, we cannot question the motivation behind the decision to deny Makky's security clearance."); *see also Zeinali v. Raytheon Co.*, 636 F.3d 544, 550 (9th Cir. 2011) (expressing agreement with the reasoning of *Makky*).

### B.  Plaintiff's Constitutional Claim

Plaintiff also asserts a discrimination claim under the "U.S. Constitution," which the court assumes arises under the Equal Protection Clause.  Am. Compl. ¶ 1 ("This is a complaint seeking remedies for violations of Title VII . . . and violations of the constitutional right to not be discriminated against on the basis of race.").  Defendants move to dismiss Plaintiff's constitutional claim under *Brown v. GSA*, 425 U.S. 820, 829 (1976), in which the Court held that Title VII provides "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination."   The court agrees with Defendants.   Because Plaintiff's constitutional claim is identical to her discrimination claim under Title VII, her constitutional claim must be dismissed under *Brown*.  *See Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) (stating that "the Title VII remedy declared exclusive for federal employees in *Brown v. GSA* precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation").

Plaintiff argues that, notwithstanding *Brown*, a constitutional claim remains available if *Egan* were to preclude relief under Title VII.  Pl.'s Opp'n, ECF No. 33, at 26.  But that argument, if accepted, would allow a plaintiff asserting employment discrimination to avoid *Egan* simply by invoking both Title VII and the Constitution, thus effectively nullifying *Egan*.  Plaintiff, as a federal employee, is covered under Title VII.  That statute provides her exclusive remedy. Accordingly, Plaintiff's constitutional claim is dismissed.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is denied in part and granted in part.  Plaintiff may proceed with her Title VII claim, but her constitutional claim of discrimination is dismissed.  The court shall issue a separate Order for an Initial Scheduling Conference.


Dated:  August 14, 2015                         Amit P. Mehta
                                                United States District Judge