UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIETT A. AMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cv-01054 (APM) |
| ) | |
| KIRSTJEN NIELSEN, Secretary of ) | |
| Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

After a four-day trial, a jury returned a verdict in favor of Defendants Department of Homeland Security ("DHS") and the Secretary of DHS on Plaintiff Harriett Ames's discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964. Plaintiff is the former Chief of the Personnel Security Branch within the Federal Emergency Management Agency ("FEMA"), a component of DHS. Plaintiff brought this action under Title VII, alleging, among other things, that FEMA discriminated against her on the basis of sex and race and retaliated against her for engaging in prior protected activity by reassigning her to the position of Chief of the Training Unit.[1]

---

[1] Plaintiff raised other claims in her Amended Complaint, *see generally* Am. Compl., ECF No. 29, but the court either dismissed or entered summary judgment in favor of Defendants on those claims, *see Ames v. Johnson*, 121 F. Supp. 3d 126, 127 (D.D.C. 2015) (granting Defendants' motion to dismiss Plaintiff's claim under the Equal Protection Clause); *Ames v. Nielsen*, 286 F. Supp. 3d 70, 75 (D.D.C. 2017) (granting Defendants' motion for summary judgment as to Plaintiff's Title VII claims based on the limited suspension of adjudicatory authority within Plaintiff's Branch and the temporary detail of a DHS employee to Plaintiff's Branch, but allowing Plaintiff's Title VII claims based on her reassignment to proceed to trial).

Before the court is Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, ECF No. 149. For the reasons set forth below, Plaintiff's Motion is denied.

## II. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

The court begins with—and quickly dismisses—Plaintiff's Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b). Under Rule 50, a court may grant a motion for judgment as a matter of law after a jury trial if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on th[e] issue." FED. R. CIV. P. 50(a)(1). To determine whether this standard is met, the court "should review all of the evidence in the record" and "must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court . . . may not make credibility determinations or weigh the evidence." *Id.*

Here, Plaintiff acknowledges that credibility determinations are off-limits in evaluating a party's Rule 50 motion. *See* Pl.'s Mot. for J. as Matter of Law or, in the Alternative, for New Trial, ECF No. 149, Pl.'s Mem. of P. & A., ECF No. 149-1 [hereinafter Pl.'s Mem.], at 6–7. Nevertheless, Plaintiff asks the court to grant her Rule 50 motion because Defendants "failed to rebut [her] *prima facie* case at trial by offering *credible* admissible evidence that there was a legitimate business reason for the actions taken against [her]." *Id.* at 8 (emphasis added). Indeed, her entire argument is premised on the credibility of various players involved in her reassignment. *Id.* at 8; *see id.* at 3–4 (describing testimony of witnesses Cantu, Salazar, and Oliver as "inconsistent" and/or "false"). True, there were some inconsistencies in the testimony regarding the reasons for Plaintiff's reassignment and who made the decision to reassign her. *See id.* at 3–4. But it was within the province of the jury to assess the credibility of the witnesses in light of

those inconsistencies and to determine how much weight, if any, to give their testimony. *See Williams v. Johnson*, 870 F. Supp. 2d 158, 162 (D.D.C. 2012) ("[B]ecause the fundamental function of the jury is 'to select, from among conflicting inferences and conclusions, that which it finds most reasonable,' 'the court cannot substitute its view for that of the jury, and can assess neither the credibility nor weight of the evidence.'") (first quoting *Metrocare v. Wash. Metro. Area Transit Auth.*, 679 F.2d 922, 924 (D.C. Cir. 1982); then quoting *Scott v. District of Columbia*, 101 F.3d 748, 752 (D.C. Cir. 1996)). Thus, for the same reasons stated at trial, Plaintiff's Motion for Judgment as a Matter of Law is denied. *See* Jury Trial Tr., ECF No. 145, at 840–41 (denying Plaintiff's Rule 50(a) motion for same reasons court denied Defendants' Rule 50(a) motion); *see also id.* at 839–40 (denying Defendants' Rule 50(a) motion); Jury Trial Tr., ECF No. 142, at 361–64 (same). Viewing the evidence in the light most favorable to Defendants, a reasonable jury could have credited the non-discriminatory and non-retaliatory reasons offered for Plaintiff's reassignment. *See* Def.'s Opp'n to Pl.'s Mot. for J. as Matter of Law or, in the Alternative, for New Trial, ECF No. 152, at 3–5 (summarizing evidence presented at trial); *see also Williams*, 870 F. Supp. 2d at 162 ("The jury's verdict must stand 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree.'") (quoting *Scott,* 101 F.3d at 752).

### III.  PLAINTIFF'S MOTION FOR NEW TRIAL

Having concluded that Plaintiff is not entitled to judgment as a matter of law under Rule 50, the court turns to Plaintiff's alternative argument that a new trial is warranted under Rule 59. Rule 59 allows a court to grant a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part

3

of the trial court." *Queen v. Schultz*, 310 F.R.D. 10, 21 (D.D.C. 2015) (alteration in original) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). While the trial court is entrusted with the exercise of discretion, "[a] new trial should be granted only where the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice." *Lee v. District of Columbia*, 19 F. Supp. 3d 281, 286 (D.D.C. 2014) (internal quotation marks omitted).

Plaintiff offers five reasons why she is entitled to a new trial under Rule 59. As discussed below, none of these reasons warrant upsetting the jury's verdict.

### A. "False Testimony" of Plaintiff's Supervisors

Plaintiff first claims that she is entitled to a new trial because "[t]he previous false testimony by Messrs. Cantu, Salazar, and Oliver"—coupled with Defendants' "failure to offer any admissible, credible evidence from these decision-makers to rebut plaintiff's *prima facie* cases of discrimination and retaliation"—make clear that the jury's verdict in favor of Defendants was a "seriously erroneous result." Pl.'s Mem. at 9; *accord id.* ("Thus, denial of this motion would result in a 'clear miscarriage of justice.'"). The court need not linger over this first argument, as it is based on the same erroneous premise advanced in support of Plaintiff's motion for judgment as a matter of law: that the court can countermand a jury's credibility determination. Therefore, the court rejects this argument for largely the same reasons stated above. *Cf. Vander Zee v. Karabatsos*, 589 F.2d 723, 729 (D.C. Cir. 1978) ("The trial court's contrary view of the credibility of the witnesses does not justify the granting of a new trial."); *Hancock v. Wash. Hosp. Ctr.*, 13 F. Supp. 3d 1, 10 (D.D.C. 2014) (holding that weight of evidence did not mandate new trial under Rule 59 where court already found that plaintiff failed to meet Rule 50 standard).

B. **"Continuing Discovery Abuses"**

The court easily disposes of Plaintiff's second argument, too. While Plaintiff contends that Defendants' "continuing discovery violations" warrant a new trial, *see* Pl.'s Mem. at 9, no such violations occurred. As the court explained in denying Plaintiff's motion in limine to exclude Kimberly Lew's November 2, 2011 email and testimony at trial, Defendants' disclosures were timely, albeit barely, and thus automatic exclusion was not warranted under Rule 37(c)(1). *See* Pretrial Hr'g Tr., ECF No. 140, at 17–18. Furthermore, to mitigate any prejudice to Plaintiff caused by Defendants' last-minute disclosures, the court ordered Defendants to make Ms. Lew available for a deposition before trial. *See* Omnibus Pretrial Order, ECF No. 116, ¶ 1.

To the extent Plaintiff claims that she was prejudiced by the late timing of Ms. Lew's deposition, which took place only four days before trial, *see* Pl.'s Mem. at 9, it is *Plaintiff* who waited approximately *a year and a half* to complain to the court about the lateness of disclosures related to Lew,[2] *see* Minute Order, Sept. 27, 2016 (setting October 21, 2016 as discovery deadline); Pl.'s First Mot. in Limine, ECF No. 92 (dated April 20, 2018) (seeking to exclude evidence concerning Lew). Rather than raising the issue at the Post-Discovery Conference, *see* Hr'g Tr. (draft), Oct. 25, 2016, at 2–4, or in her request to reopen discovery pursuant to Rule 56(d), *see* Pl.'s Opp'n to Mot. for Summ. J., ECF No. 76, at 32,[3] Plaintiff waited until she filed her first motion in limine to formally raise the issue with the court. Plaintiff cannot now be heard to complain about the timing of Lew's deposition when Plaintiff failed to exercise diligence in trying to obtain her testimony on an earlier date.

---

[2] Defendants produced Ms. Lew's email after close of business on the date of the discovery deadline. *See* Pl.'s First Mot. in Limine, ECF No. 92, Mem. of P. & A., ECF No. 92-1, at 8. Defendants supplemented their initial disclosures to identify Ms. Lew as a possible witness two days before discovery closed. *Id.* at 5.

[3] Plaintiff complained in her Opposition to Defendants' Motion for Summary Judgment that Defendants had identified Lew and Marshall as decision-makers for the first time in connection with summary judgment, *see* Pl.'s Opp'n to Mot. for Summ. J.. at 11–12, 23, 32, but never asked the court to order a post-deadline deposition of Lew.

Additionally, in her present motion, Plaintiff fails to identify any concrete way in which the timing of the deposition actually prejudiced her. Instead, she simply states that she was "denied the opportunity of using the surprise Lew admission"—that is, that Ms. Lew "had no personal knowledge" about the reasons she gave, and Defendants adopted, in recommending Plaintiff's reassignment—when "planning her case, issuing discovery requests, taking depositions, and preparing for trial." Pl.'s Mem. at 9–10. This assertion is perplexing, as Plaintiff cross-examined Ms. Lew at trial about her lack of personal knowledge. Jury Trial Tr., ECF No. 143, at 560–61. In any event, Plaintiff's generic proclamation of harm does little to convince the court that it erred in denying Plaintiff's motion in limine, let alone that such an error resulted in a "clear miscarriage of justice." *See Moore v. Hartman*, 102 F. Supp. 3d 35, 139 (D.D.C. 2015) ("[T]he standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a clear miscarriage of justice." (internal quotation marks omitted)); *cf. Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (noting, in context of finding no abuse of discretion in district court's decision to deny defendant's motion for new trial, that plaintiff's expert's testimony "did not run afoul of Rules 26 or 37—or if it did, the testimony was nonetheless admissible because any transgression was harmless under Rule 37").

### C. Ms. Lew's November 2, 2011 Email and Trial Testimony

Next up is Plaintiff's third argument, in which Plaintiff faults the court for allowing Defendants to use Ms. Lew's November 2, 2011 email as well as her trial testimony "to explain and justify the decision to transfer Ms. Ames." Pl.'s Mem. at 10. Plaintiff contends that she is entitled to a new trial because (1) the court erroneously admitted the November 2, 2011 email and Ms. Lew's testimony about the email, and (2) Defendants improperly relied on this evidence in closing arguments. *See id.* at 10–16. The court addresses each of these contentions in turn.

### 1. Admission of Lew Email and Testimony

Before turning to the merits of Plaintiff's evidentiary argument, the court makes an initial observation: The court admitted Ms. Lew's November 2, 2011 email, *see* Defs.' Opp'n to Pl.'s Apr. 20, 2018 Mot. in Limine, ECF No. 101, Ex. 2, ECF No. 101-2 [hereinafter Lew Email], as well as her testimony about the email, *see* Jury Trial Tr., ECF No. 143, at 533–51, for the purpose of showing "the reasons for why [Lew] made the recommendation" to her supervisor, Gregory Marshall, that FEMA reassign Plaintiff to another unit within the Office of the Chief Security Officer—not, as Plaintiff contends, for the purpose of establishing the truth of those reasons, i.e., that Plaintiff in fact acted as a "road block[]" and/or "halt[ed] training efforts," *see* Jury Trial Tr., ECF No. 143, at 551; *see also id.* at 521–22, 531–32, 562–65. Thus, the evidence was admitted for a non-hearsay purpose. Plaintiff's arguments about why the email does not fall within the business records exception to the hearsay rule are therefore beside the point. *See* Pl.'s Mem. at 11–13.

The question, then, is whether the court erred in admitting Ms. Lew's email and testimony as non-hearsay. It did not. In cases such as this one, where the plaintiff attempts to show that her employer's stated reason for an adverse action was a pretext for discrimination or retaliation, she cannot establish pretext merely by demonstrating that the reason *itself* was false. Instead, she must show that the employer could not have honestly and reasonably believed that the conduct underlying the stated reason occurred. *See Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." (cleaned up)); *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the

validity of the reason given even though that reason may turn out to be false."); *see also Hampton v. Vilsack*, 685 F.3d 1096, 1101 n.8 (D.C. Cir. 2012) ("In a Title VII action, the question . . . is not whether the underlying incidents occurred; rather, the issue is whether the employer honestly and reasonably believed that the underlying incidents occurred.") (cleaned up). Thus, the question of pretext turns on whether the employer reasonably and honestly believed the proffered non-discriminatory reason for the adverse action, not the truth or falsity of that reason.

Here, Lew's email and testimony were relevant to show that her supervisor, Marshall, and others in the decision-making chain *honestly and reasonably believed* that Plaintiff's work performance warranted her transfer. A reasonable juror could have concluded that Lew was the first person to recommend that Plaintiff be reassigned, and that she did so for a non-discriminatory, non-retaliatory reason. In early November 2011, Marshall asked Lew for "[her] recommendation as to what we should do with FEMA personnel security." Lew Email. Lew had assigned a subordinate to work with the Personnel Security Branch following the release of an audit report critical of the Branch, *see* Jury Trial Tr., ECF No. 143, at 533–34, and that subordinate related to Lew that Plaintiff was impeding efforts to address the report's concerns, *see* Lew Email. 3; Jury Trial Tr., ECF No. 143, at 528–29, 533–37, 546–51; Jury Trial Tr., ECF No. 144, at 683–84. That criticism apparently prompted Lew to make the recommendation to "move [Plaintiff] to another security discipline within the office." Lew Email. According to the testimony presented at trial, Marshall took Lew's recommendation and delivered it to the Executive Steering Group ("ESG"), a committee assembled to address deficiencies identified in the audit report. Jury Trial Tr., ECF No. 144, at 684–87. Cliff Oliver, Plaintiff's third-line supervisor who sat on the ESG relayed the recommendation to transfer Plaintiff to Jose Cantu, Plaintiff's first-line supervisor, and left it to Cantu to decide whether to implement the transfer. Jury Trial Tr., ECF No. 145, at 816–18, 822–

8

23. Cantu ultimately concluded that Plaintiff's transfer was warranted. *See* Defs.' Mot. for Summ. J., ECF No. 73, Ex. 30, ECF No. 73-7. When viewed against this sequence of events, the relevance of Lew's email and testimony is obvious. That proof tended to show that Plaintiff's superiors reasonably and honestly believed that there were legitimate non-discriminatory and non-retaliatory grounds for Plaintiff's reassignment. Lew's email and testimony thus were properly admitted as non-hearsay.

Belatedly, Plaintiff insists that, even if relevant, the Lew evidence was excludable under Federal Rule of Evidence 403. *See* Pl.'s Reply to Def.'s Opp'n to Mot. for J. as Matter of Law, or in the Alternative, for New Trial, ECF No. 155 [hereinafter Pl.'s Reply], at 10. As a threshold matter, the court rejects that argument for the simple reason that Plaintiff raises it for the first time in her reply brief. *See Forman v. Korean Air Lines Co.*, 84 F.3d 446, 448 (D.C. Cir. 1996). Moreover, even if the court were to consider the argument, the probative value of the Lew evidence was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. As already discussed, the Lew evidence was probative of the non-discriminatory, non-retaliatory reason offered for Plaintiff's transfer. The risk that the jury would use the evidence for an improper purpose—to infer that Plaintiff in fact impeded efforts to improve the Branch—was mitigated by *three* limiting instructions given by the court. First, after Ms. Lew finished testifying about the contents of the email on direct examination, the court instructed the jury as follows:

> [T]here are references in th[e] email to observations and understandings that Ms. Lew had about what was transpiring in the training division.[4] You should not take those observations and understandings as the truth of what, in fact, was happening; rather, you should take them as the reasons for why she made the recommendation that she made.

---

[4] The court misspoke but clearly meant the Personnel Security Branch, not the training division.

Jury Trial Tr., ECF No. 143, at 551. The court reiterated this instruction after Plaintiff completed her cross-examination of Ms. Lew:

> I want to just reiterate the limiting instruction I gave earlier. You've now heard Ms. Lew testify that some of what she heard about—some of the basis of that email [were] things she was told [by] others. Once more, you should not accept what she was told by others for the truth but, rather, it's being provided to you as background for why she made the recommendation she did.

*Id.* at 562–63. And the court admonished the jury one final time during its instructions delivered before closing arguments. Jury Trial Tr., ECF No. 146, at 948–49; *accord* Final Jury Instrs., ECF No. 129, at 5.[5] These limiting instructions provided Plaintiff ample protection against unfair prejudice. *Cf. Penry v. Johnson*, 532 U.S. 782, 799 (2001) ("We generally presume that jurors follow their instructions."); *United States v. Crews*, 856 F.3d 91, 97 (D.C. Cir. 2017) ("We generally presume that 'a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it' absent 'an overwhelming probability that the jury will be unable to follow the court's instructions.'") (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

The foregoing conclusions are supported by binding precedent that Plaintiff fails to cite—*Desmond v. Mukasey*, 530 F.3d 944 (D.C. Cir. 2008). In *Desmond*, the plaintiff, a trainee at the FBI Academy, brought disparate treatment and retaliation claims under the Rehabilitation Act. *See id.* at 946–47. In his retaliation claim, the plaintiff alleged that he was refused a promotion from the FBI Academy after he filed an equal employment opportunity complaint based on his disability. *See id.* at 950–52. To establish a non-retaliatory reason for his non-promotion, the

---

[5] The instruction reads as follows:

> Some evidence was admitted for a limited purpose only. Specifically, the court admitted Defendant's Exhibit 3 into evidence. Contained within Exhibit 3 are statements about Ms. Ames that were based on what others told Ms. Kimberly Lew. Ms. Lew also provided some testimony as to those observations by others. I permitted the observations of others as reflected in the email and Ms. Lew's testimony solely for the purpose of providing context for the recommendation Ms. Lew made. You shall not consider those observations for the truth of the matter asserted.

10

government offered as proof a 112-page investigation report that detailed the plaintiff's "alleged failures, infractions, and indiscretions at the Academy." *Id.* at 965. The report was prepared by a subordinate and submitted to a superior, who in turn made the recommendation not to promote the plaintiff up the chain of command. *Id.* at 950–51. The recommendation was accepted. *See id.* at 952–53. On appeal, the plaintiff challenged the district court's admission of the report, arguing it had no probative value and in any event was inadmissible under Rule 403. *Id*. at 965. The Circuit rejected these arguments. *Id*. at 965–66. It held that the probative value of the report was "obvious," as it showed the information that the superior had before him when he made his recommendation not to promote the plaintiff. *Id.* at 965. As to the risk of unfair prejudice, the Circuit held that such risk was sufficiently mitigated because the district court: (1) "refused to admit the report for the truth of its substance"; (2) forbade both sides from bolstering or attacking the report; and (3) "repeatedly admonished the jury to consider the report solely for the limited purpose of showing [the superior's] reliance." *Id.* at 966. This approach, the court concluded, "kept the trial—and the jury—focused on events occurring after [the plaintiff] filed his EEO complaint, striking a balance between providing the jury with the information it needed and protecting [the plaintiff] from the risk of unfair prejudice." *Id.*

This court sees little material difference between this case and *Desmond*. If anything, the report at issue in *Desmond* supplied a far greater risk of unfair prejudice, given its length and multiple instances of "failures, infractions, and indiscretions" detailed therein. Here, by contrast, the court admitted a single email and allowed limited testimony about why Lew made the transfer recommendation and why Marshall forwarded it on to the ESG. Notwithstanding, this court still put in place the same types of safeguards the Circuit in *Desmond* considered "sensible and well

11

within the district court's discretion." *Id.* If the trial court in *Desmond* did not err, neither did this court.

                2.      *Defendants' Reliance on Lew Email and Testimony in Summation*

Plaintiff also maintains that she is entitled to a new trial because she was unfairly prejudiced by defense counsel's repeated efforts in summation to use Ms. Lew's email and testimony for an impermissible purpose: to argue that Plaintiff in fact had "halted" training efforts and created "road blocks" to improving the Personnel Security Branch. Pl.'s Mem. at 10, 14–15; *see also Caudle v. District of Columbia*, 707 F.3d 354, 359 (D.C. Cir. 2013) ("A new trial may be granted based on improper jury argument."). That argument fails for multiple reasons.

First, Plaintiff wildly overstates the centrality of Lew's email and testimony to the government's closing argument. According to Plaintiff, Defendants' "closing statement focused on the agency's contention that Ms. Lew's email and her subsequent testimony *were* true . . . [and] explain[ed] why Ms. Ames was transferred to a nonexistent position." Pl.'s Reply at 11; *accord* Pl.'s Mem. at 10 (arguing that counsel used evidence to demonstrate that Defendants had a legitimate business reason for transferring Plaintiff). But of the thirty transcript pages comprising Defendants' summation, reference to Ms. Lew's email or testimony concerning the transfer recommendation appears on only five. Jury Trial Tr., ECF No. 146, at 988–89, 991–92, 995. On those pages, defense counsel merely discusses the evidence in the context of explaining how the recommendation came about in the overall chronology of events. *See id.* at 985–1006. The Lew evidence therefore did not play the "central" role in Defendants' summation that Plaintiff ascribes to it. Pl.'s Mem. at 10.

Second, Plaintiff greatly exaggerates the defense closing as having "repeatedly and blatantly sought to circumvent the Court's limiting instruction[s]." Pl.'s Reply at 11. To be sure,

12

in the court's view, defense counsel did attempt to cross the line once during summation. After referencing the email to the jury for the first time, defense counsel stated, "I asked [Ms. Lew], [d]id you want to make sure that email, the information's correct? Yes." Jury Trial Tr., ECF No. 146, at 989. Plaintiff objected, and the court sustained the objection, agreeing during a bench conference that the argument made by defense counsel had suggested Ms. Lew's "recommendations have a basis in fact and that they were not inadmissible hearsay." *Id.* at 990. Thereafter, defense counsel did no more than highlight the text of the email and note that Marshall received the transfer recommendation from Lew. *See id.* at 991–92. That was permissible. He did not urge the jury, as Plaintiff contends, to find that Plaintiff, in truth, interfered with and impeded efforts to address problems within the Personnel Security Branch. If anything, the court guarded against that prospect by stating in response to an objection, "The jury understands what the limitations are of that document. They've been instructed multiple times[.]" *Id.* at 991.

Finally, there is no reason to believe that the jury would have ignored the court's multiple limiting instructions, even if defense counsel's summation went too far. By the time of closings, based on the court's thrice-delivered limiting instruction, the jury was acutely aware of the limited purpose for which the court admitted Lew's email and testimony. The court presumes that the jury followed these limiting instructions. *See Tennessee v. Street,* 471 U.S. 409, 414–15 (1985). Moreover, this is not a case where counsel egregiously and repeatedly exceeded the limitations placed on the evidence. *Cf. Caudle*, 707 F.3d at 363 (distinguishing case where counsel "made a *single* misstatement and ceased further misstatements after the district court sustained an objection" from case where counsel made "*four* impermissible statements"). And, while defense counsel's use of the Lew evidence went to a central issue in the case—the legitimacy of Defendants' reasons for reassigning Plaintiff—Plaintiff exaggerates the closeness of the case. *See*

13

*id.* at 361 (listing closeness of case, centrality of issues, and steps taken to mitigate effects as three factors courts should consider when determining whether error was harmless). Plaintiff is simply incorrect that Defendants would have been left with "perjured testimony" and "no legitimate business reason to explain the transfer" in the absence of the Lew evidence. *See* Pl.'s Reply at 14. The record speaks for itself on that score.

Accordingly, a new trial is not warranted based on Defendants' alleged improper use of the Lew email and testimony during closing argument.

### D. Mixed-Motive Instruction

Moving on to Plaintiff's fourth argument, Plaintiff asks the court to reconsider her request for a mixed-motive instruction on her retaliation claim and to grant her a new trial as to that claim. *See* Pl.'s Mem. at 16. The court declines the invitation for the same reasons it did before. In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 352 (2013), the Supreme Court expressly eliminated the mixed-motive theory of liability for Title VII retaliation claims, holding that such claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action." The court therefore did not err in refusing to give a mixed-motive instruction on Plaintiff's retaliation claim, and a new trial is not justified on this ground.

Furthermore, Plaintiff has consistently—and mistakenly—cited the Fourth Circuit's decision in *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243 (4th Cir. 2015), as evidence of a Circuit split on the mixed-motive issue. *See, e.g.*, Pl.'s Mem. at 16. But the split referenced in *Foster* pertains to a question not relevant here— "whether *Nassar* has any bearing on the causation prong of the *prima facie case.*" *Foster*, 787 F.3d at 250–51 (emphasis added). Like *Nassar*, the question here arises in the context of a post-trial motion in a Title VII case and does not turn on any such Circuit split. *See Foster*, 787 F.3d at 250 ("*Nassar* involved a post-

judgment motion for judgment as a matter of law in a mixed-motive case, and therefore did not address the elements of a prima facie case of retaliation under the pretext framework."); *see also Durant v. D.C. Gov't*, 875 F.3d 685, 697 (D.C. Cir. 2017) ("If the employer provides a legitimate, nonretaliatory reason for its conduct, the burden-shifting framework disappears and the question becomes whether a reasonable jury could infer retaliation from all the evidence . . . ." (cleaned up)). In short, Plaintiff cites no authority that would have permitted a mixed-motive instruction on her retaliation claim.

### E. "Reconsideration of Knowingly False Security Reports"

The final ground for a new trial asserted by Plaintiff challenges this court's prior rulings addressing *Department of Navy v. Egan*, 484 U.S. 518 (1988), and its progeny, which bar judicial review of Title VII claims that require courts to evaluate the merits of security clearance determinations. At the summary judgment stage, the court found that *Egan* did not apply to Plaintiff's Title VII claims based on her reassignment and allowed those claims to proceed to trial. *See Ames v. Nielsen*, 286 F. Supp. 3d 70, 89–90 (D.D.C. 2017). Plaintiff later filed a motion in limine seeking to preclude Defendants from asserting at trial that Plaintiff's reassignment was based on her improper granting of security clearances. *See generally* Pl.'s Second Mot. in Limine, ECF No. 94. In denying Plaintiff's motion, the court held that Defendants could present evidence at trial "regarding the agency's limited suspension of Plaintiff's Branch's responsibility for security clearances as background for Plaintiff's . . . reassignment." The court further held that Plaintiff could not, under *Egan*, challenge the reasons for the actions taken against the Branch. Omnibus Pretrial Order ¶ 2.

It is this decision that forms the basis of Plaintiff's motion for a new trial. *See* Pl.'s Mem. at 17; Pl.'s Reply at 18–19. Plaintiff appears to ask the court to reconsider its prior motion in

limine ruling in light of the evidence presented at trial—namely, Defendants' "abandon[ment of] prior sworn testimony of its principal witnesses and [a] stipulat[ion] that Ms. Ames never issued any such interim Top Secret clearances." Pl.'s Mem. at 17. In particular, Plaintiff contends that she is entitled to a new trial "because the record now shows that the agency's *Egan* defense and concomitant limitation of plaintiff's evidence was based on 'knowingly false security reports or referrals,'" Pl.'s Reply at 19 (quoting *United States v. Old Chief*, 519 U.S. 172, 186 (1997)). The D.C. Circuit recognized knowingly false reporting as falling outside the *Egan* rule in *Rattigan v. Holder*, 689 F.3d 764, 770 (D.C. Cir. 2012).

The court is confused by Plaintiff's argument. For starters, the court allowed in as evidence the limited suspension of the Personnel Security Branch's security-clearance adjudication authority only as background evidence to place into context why the Branch's work was subject to scrutiny. *See* Pretrial Hr'g Tr. at 24–25. There was no evidence that an improper clearance determination made by Plaintiff or anyone else under her supervision was the cause of Plaintiff's transfer. Therefore, even if the court were to accept that the Branch's limited suspension was based on a false premise—which is a real reach, to say the least—such falsity had no causal connection to the alleged adverse action.

Furthermore, *Rattigan* has no application here. There, the D.C. Circuit held that *Egan* does not apply to Title VII claims premised on the assertion that "agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false." *Rattigan*, 689 F.3d at 771. But in that case, the plaintiff alleged that "the decision to refer" another employee's purported concerns about the plaintiff to the agency's Security Division, which prompted an investigation into the plaintiff's security clearance, "amounted to unlawful retaliation for [his] pursuit of discrimination claims." *Id.* at 766. The exception announced in *Rattigan* thus

16

applied to "security reporting claims." *Id.* at 771 (announcing "knowingly false standard for security reporting claims"). Here, by contrast, the false accusations of which Plaintiff complains arose in the context of the present litigation and took the form of discovery responses. *See* Pl.'s Second Mot. in Limine, Mem. in Supp., ECF No. 94-1 at 2–4. They do not form the basis of the claims alleged in her Amended Complaint. *See generally* Am. Compl., ECF No. 29. *Rattigan* is therefore inapposite.

Finally, to the extent Plaintiff argues that she is entitled to a new trial because "the jury should be able to hear that the justification for Ms. Ames' transfer was so weak that the agency felt it necessary to manufacture the claim of issuance of interim Top Secret security clearances to justify its position," Pl.'s Reply at 18, that argument makes little sense to the court. Not only did the jury have as evidence a stipulation that no interim Top-Secret clearances were granted during 2010 or 2011, *see* Jury Trial Tr., ECF No. 142, at 309, but Plaintiff also questioned her former supervisors at trial about the falsity of any previous statements to the contrary, *see, e.g., id.* at 270–71, 313–16; Jury Trial Tr., ECF No. 143, at 558–59; *see also* Jury Trial Tr., ECF No. 146, at 978–81, 1006–09, 1013 (relying on these inconsistencies in closing arguments). In sum, whatever importance Plaintiff attaches to the inconsistent testimony offered by her supervisors concerning the nature of interim security clearances granted ("Secret" or "Top-Secret"), that testimony does not bring her Title VII claims within *Rattigan*. Nor does it provide any basis to grant her a new trial, as she had the opportunity to confront the witnesses about any inconsistencies.[6]

---

[6] In her Reply, Plaintiff also maintains that she has "a separate actionable claim for the removal of her security clearance duties as these actions were based on claims within the exception recognized in *Rattigan*." Pl.'s Reply at 19. The court assumes that this argument refers to its granting of summary judgment in favor of Defendants based on the agency's decision to suspend Plaintiff's Branch from adjudicating security clearances for certain employees. *See Ames*, 286 F. Supp. 3d at 79; *see also* Am. Compl. ¶¶ 19–33. The non-*Egan* reasons for that decision still stand, however. *See Ames*, 286 F. Supp. 3d at 84 (holding that the July suspension did not qualify as an adverse action because Plaintiff failed to show objectively tangible harm); *id.* (holding that Plaintiff's retaliation claim failed as a matter of law because there was no dispute that the suspension occurred before the alleged protected activity).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court denies Plaintiff's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial, ECF No. 149. Plaintiff shall respond to Defendants' Bill of Costs, ECF No. 139, no later than November 16, 2018

Dated: November 2, 2018

Amit P. Mehta
United States District Judge